IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:19cr214-MHT |
| | ) | (WO) |
| RONALD LEWIS HENDERSON, JR. | ) | |
| | ) | |

OPINION

Defendant Ronald Lewis Henderson, Jr. pled no contest and was found guilty of four charges from a five-charge petition to revoke his term of supervised release. *See* Amended Petition (Doc. 53). This petition mainly stemmed from two incidents of domestic violence in which he injured his girlfriend, as well as a third incident in which he pointed a handgun at another woman. These were not the first incidents of domestic violence during his term of supervision.

At sentencing, the court found that Henderson's guideline range was 6 to 12 months. The court granted a variance, sentencing him to 84 days of incarceration--time served plus five days--followed by 12 months of home detention. The court also issued a

no-contact order to prevent him from contacting his girlfriend, required him to take part in individual, trauma-informed therapy once per week to address the reasons for his violent conduct toward women, and imposed several additional conditions. The court writes now to explain the reason for the variance and the details of the treatment plan imposed.

Prior to sentencing, Henderson was evaluated by two psychologists: Dr. Carla Stover of Yale University and Dr. Kristen Triebel of the University of Alabama at Birmingham. Dr. Triebel, a neuropsychologist, found that Henderson has either borderline intellectual functioning or a mild intellectual disability. As she explained, "[m]ost people with mild intellectual disability function at a mental age between 9 and 11, with borderline intellectual functioning being slightly above that." Triebel Evaluation (Doc. 56-2) at 1-2. Dr. Stover, a clinical psychologist who has worked in domestic violence research for 20 years, confirmed that

2

Henderson remains at around a third-grade level not only in his intellectual functioning and literacy, but in his social and emotional development as well. This is in part due to his cognitive impairments, but those limitations have been exacerbated by significant childhood trauma and resulting attachment issues. According to Dr. Stover's evaluation, Henderson has experienced seven of the 10 basic categories of adverse childhood experiences (ACEs); as this court has previously found, "A person's risk of serious, long-term adverse effects becomes very high once the individual has experienced four of these 10 categories." *United States v. Carter*, -- F. Supp. 3d ---, 2020 WL 7312182, at *5 (M.D. Ala. 2020) (Thompson, J.). Dr. Stover found that Henderson is depressed and anxious, and that he struggles with extreme lack of trust in relationships because of his trauma.

3

The court's primary concern in this case was protecting women who may encounter Henderson, romantically or otherwise, in the future. In determining how best to do so, the court was particularly aided by Dr. Stover's testimony about what, in her experience working with perpetrators of domestic violence, could help Henderson stop hurting women with whom he is involved. There is no one-size-fits-all sentence for such perpetrators. She explained that there are various root causes of domestic violence; different men harm their intimate partners for different reasons. Henderson does not, like some men, use violence in his relationships because of a misogynistic desire for dominance or an indifference to women's suffering. He is not sadistic, psychopathic, or controlling. Instead, he uses violence in relationships when he is overwhelmed by his emotions, especially his anxiety and mistrust. Because of his cognitive, social, and emotional deficits, he

4

resorts to violence when he is scared, and he lashes out to resolve conflicts because he does not know how to express his feelings.

None of this makes the violence that Henderson has visited on the women in his life less harmful or disturbing. There are victims in this case, and the court was inclined initially to incarcerate him to keep him away from his girlfriend. However, the court was ultimately convinced by Dr. Stover's testimony that such a punishment would be counterproductive to the paramount goal of protecting Henderson's girlfriend and the public. The United States Probation Office recommended that Henderson receive about 12 months of incarceration--with his time served and other credits, his actual custody term would likely have been about 220 days--with no term of supervision to follow.[1] As

---

1. The court typically gives a sentence of 12 months and a day, rather than just 12 months, so that a

Dr. Stover explained, that course of action would all but ensure further violence; Henderson would sit in jail for a period of months and emerge no better prepared to manage his emotions and avoid becoming violent in his intimate relationships than he is now. Dr. Stover found Henderson's likelihood of domestic violence recidivism to be very high without treatment. Locking him up might provide a brief repose, but it would do nothing to affect his long-term risk of continuing to hurt women.

Instead, after considering the specific reasons why Henderson engages in violence, Dr. Stover recommended a course of sustained, trauma-informed therapy with a female counselor to teach him "skills building in the areas of emotion regulation, communication and coping skills." Stover Evaluation (Doc. 56-4) at 5. He will

---

defendant may earn, and is encouraged to earn, "good time" credit.

6

receive concrete examples and instruction in how to identify his feelings, recognize triggers that heighten his emotions and make him reactive, notice his anger when it arises, interrupt his aggression and reduce the intensity of his feelings, and communicate verbally and non-verbally instead of resorting to violence. Working with a female counselor will help him have what Dr. Stover called a "reparative experience"--a healthy, trusting relationship with a woman, in which he can learn to listen to her perspective.

Henderson will receive this therapy once per week throughout his term of supervision. Dr. Stover recommended that he receive such therapy for six to 12 months; the court will therefore evaluate after six or seven months whether he needs the full year of therapy to continue working on his ability to avoid violence. Henderson will also receive a psychiatric evaluation to determine whether medication could help him manage his emotions, as well as a vocational assessment to

identify potential educational services and employment opportunities for him.  This vocational assessment was strongly recommended by the experts for addressing his domestic violence--assisting him with developing financial stability and independence will help protect the women in his life because, as Dr. Stover explained, "[f]inancial strain is a significant contributor to domestic violence incidents."  *Id.* at 6.  Finally, Henderson will not be allowed to use drugs or alcohol during his term of supervision because, as Dr. Stover said and based on the court's experience in past cases, substance use--in particular, alcohol use--facilitates violence, particularly domestic violence.

Henderson has previously taken part in an anger management course, which did not succeed in breaking his cycle of violence.  But, according to Dr. Stover's testimony, there now exist many different kinds of treatment approaches for perpetrators of domestic violence tailored to the various reasons why men use

8

violence in relationships. A program directed at a root cause of violence that is different from what motivates Henderson's aggression would have little value for him. It is not at all clear that the course he attended was appropriate for him, particularly given his intellectual challenges. Tailoring the treatment to Henderson's specific abilities and needs gives the approach the court takes today a much greater chance of success.

The court found that this sentence--combining tailored treatment with home detention and a no-contact order--was the best way to protect the public from further violence. *See* 18 U.S.C. § 3553(a)(2)(C). Indeed, in light of Dr. Stover's evaluation and testimony, the court found that this sentence was the only realistic way to protect the public in the long term. Weekly therapy that is tailored to Henderson's circumstances and the particular causes of his violence will give him the skills and assistance he needs to

9

stop hurting women. It will teach him how to avoid violence in the future. And coupling that therapy with home detention and a strict no-contact order with his girlfriend will protect her from him while he develops the emotional skills he needs to be able to engage in a romantic relationship without using violence. For these same reasons, the court also found that this sentence was the best way to provide Henderson with necessary treatment and to deter him from future violent conduct. See 18 U.S.C. § 3553(a)(2)(B), (D).[2]

---

2. It is not clear that the incident in which Henderson pointed a handgun at another woman fits the pattern of conduct addressed in this opinion. The record is not developed as to the handgun incident and does not reflect that his conduct then was relationship violence; it is unclear whether Henderson and the victim even knew each other. The court was troubled by this incident, but decided nonetheless to opt for the approach discussed here because Dr. Stover testified that this incident did not change her opinion either as to the reasons for Henderson's violence or the necessary treatment.

Also, the court was convinced that the sentenced it imposed was sufficiently punitive to address this

10

DONE, this the 27th day of May, 2021.

                              /s/ Myron H. Thompson
                            **UNITED STATES DISTRICT JUDGE**

---

incident even if the incident was not a product of a domestic relationship.  As stated, the imposed sentence included approximately two-and-a-half months of incarceration (time served), followed by a full year of home confinement.  The guideline range here was 6 to 12 months.  Even if the court had given the essentially punitive, 12-month sentence recommended by the United States Probation Office, the sentence would have resulted--with Henderson's time served and other credits--in only just over seven months (that is, 220 days) of incarceration, with no term of supervision to follow. *See supra* note 1. The court believes that the sentence it actually imposed was comparably, if not more, punitive, for it resulted in Henderson's freedom being curtailed for over 14 months: the approximately two-and-a-half months of time served and the 12 months of home detention.

    Moreover, Henderson is still subject to a state charge resulting from the handgun incident.

    In conclusion, the court was convinced that, even considering the handgun incident, it was still in the best interest of the public--that is, its interest in protecting women who may encounter Henderson, romantically or otherwise, from violence in the future--to take the opportunity provided in this case to impose the comprehensive treatment plan it did.